IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| CARLOS RAFAEL, <br> VILA NOVA DO CORVO II, INC., <br> STEPHANIE RAFAEL DEMELLO, and <br> CARLOS PEREIRA, | ) <br> )    COMPLAINT <br> ) <br> ) |
| Defendants. | ) <br> ) |

## COMPLAINT

Plaintiff, the United States of America, acting at the request of the United States Coast Guard, files this Complaint and alleges the following:

## NATURE OF THE ACTION

1. This is a civil action brought by the United States against Carlos Rafael, Vila Nova do Corvo II, Inc., Stephanie Rafael DeMello, and Carlos Pereira (collectively "Defendants"), seeking civil penalties for multiple violations of Section 311 of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1321. The Complaint addresses Defendants' willful discharges of oil, including used oil-soaked engine fuel filters and oily bilge waste, from the commercial fishing vessel *Vila Nova do Corvo II* into the ocean offshore of southeastern New England, and Defendants' related violations of the Coast Guard's pollution control regulations.

## JURISDICTION, AUTHORITY, AND VENUE

2. This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

1

3. Authority to bring this action is vested in the United States Department of Justice by, *inter alia*, 28 U.S.C. §§ 516 and 519.

4. Venue is proper in this District pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1391 and 1395(a), because the claims arose in this District and Defendants reside and do business in this District.

## DEFENDANTS

5. Defendant Vila Nova do Corvo II, Inc. is a Massachusetts corporation based in New Bedford, Massachusetts. The company owns the U.S.-flagged *Vila Nova do Corvo II* (Official Number: 618384). The *Vila Nova do Corvo II* is a commercial fishing vessel homeported in New Bedford. The vessel measures approximately 94 feet long and is approximately 163 gross tons. The vessel is used to catch sea scallops.

6. Defendant Carlos Rafael is the President, Treasurer, and Director of Vila Nova do Corvo II, Inc. At times relevant to the Complaint, he controlled and managed the operations of the corporation and the *Vila Nova do Corvo II*. He also was an operator and person in charge of the vessel at the time of the CWA violations alleged in this Complaint. His principal residential address is in North Dartmouth, Massachusetts. He currently is incarcerated at a federal prison in Massachusetts.

7. Defendant Stephanie Rafael DeMello is and has been the manager of Vila Nova do Corvo II, Inc. during at least the time Carlos Rafael has been incarcerated, including before, during, and after the *Vila Nova do Corvo II's* February 2018 fishing voyage. She is an operator and person in charge of the vessel for the CWA violations alleged in this Complaint. She resides in North Dartmouth, Massachusetts.

8. Defendant Carlos Pereira has acted as the captain of the *Vila Nova do Corvo II* and as an operator and person in charge of the vessel for the CWA violations alleged in this Complaint, including before, during, and after the fishing voyage that departed New Bedford on February 9, 2018, and returned to New Bedford on February 15, 2018. He resides in Dartmouth, Massachusetts.

## FACTS

9. Vila Nova do Corvo II, Inc. has owned the vessel since 2006.

10. Defendants Carlos Rafael, Stephanie Raphael DeMello, and Carlos Pereira were the operators and persons in charge of the *Vila Nova do Corvo II* at times relevant to this Complaint. They managed the operations of the vessel, including handling and disposal of wastes, purchasing equipment for the vessel, managing the crew, scheduling fishing voyages, and coordinating the sale of the catch.

11. Defendants knew that the *Vila Nova do Corvo II* lacked the equipment and capacity to retain on board all of the oily mixtures, as described below, generated while underway, that the vessel regularly discharged used fuel oil filters and oily mixtures overboard into the ocean during voyages, and that discharging oil overboard is unlawful.

12. The *Vila Nova do Corvo II* does not have an oil-water separating system on board, and lacks the capacity to store the quantity of oily mixtures generated on its typical fishing voyages.

13. Defendants nonetheless continued to operate the *Vila Nova do Corvo II* without adequate capacity to retain all of its waste oil and oily mixtures on board and continued to discharge oily mixtures overboard.

14. Fuel oil and lube oil routinely leaked from machinery into the *Vila Nova do Corvo II*'s engine room bilge.

15. Water and other waste fluids that entered the engine room bilge commingled with the fuel oil and lube oil to form an oily mixture of bilge waste.

16. Rather than properly treat or store the engine room's oily bilge waste onboard the *Vila Nova do Corvo II*, Defendants routinely, on a near-daily basis, caused oily mixtures to be pumped out of the engine room bilge into waters of the United States offshore of southeastern New England during fishing voyages.

17. Defendants used an electric water pump onboard the *Vila Nova do Corvo II* to illegally discharge oily waste from the engine room bilge overboard multiple times during each fishing voyage.

18. Subject to reasonable opportunity for further investigation or discovery, this has been Defendants' typical oily waste disposal practice for the vessel for an extended period of time, including before, during, and after the fishing voyage that occurred in February 2018.

19. Defendants failed to take action to prevent or correct the violations alleged in this Complaint.

20. In February 2018, the Coast Guard boarded the vessel and discovered a piping configuration connecting the pump in the engine room bilge to piping that runs overboard for direct discharges of oily mixtures into the ocean.

21. In addition to discharging oily mixtures from the engine room bilge, Defendants routinely dumped used, oil-soaked engine fuel filters from the *Vila Nova do Corvo II* into the ocean during fishing voyages.

22. Defendants' routine discharges of oily bilge waste and dumping of oil-soaked engine fuel filters enabled Defendants to avoid the cost of proper waste management and disposal and the *Vila Nova do Corvo II* to stay at sea longer to increase its fish catch.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violations of CWA Section 311(b)(3),
33 U.S.C. § 1321(b)(3) – Discharges of Oil**

23. The preceding paragraphs are incorporated herein.

24. Enforcement of Section 311 of the CWA supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1251(a), 1321(b)(1).

25. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil "into or upon," *inter alia*, "the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone . . . or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnuson-Stevens Fishery Conservation and Management Act) in such quantities as may be harmful . . . ."

26. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4). The President delegated authority to the Administrator of the Environmental Protection Agency under CWA § 311(b)(3) and (b)(4) for determining quantities of oil the discharge of which may be harmful. Exec. Order No. 12777, Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). The EPA determined that discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon

5

or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are, for purposes of Section 311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

27. Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ." 33 U.S.C. § 1321(b)(7)(A).

28. Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

29. Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

30. Defendants are the owner, operators, or persons in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA. 33 U.S.C. § 1321(a)(6).

31. The *Vila Nova do Corvo II* is a "vessel" within the meaning of Section 311(a)(3) of the CWA. 33 U.S.C. § 1321(a)(3).

32. Each time the *Vila Nova do Corvo II* dumped used engine fuel filters and pumped oily mixtures overboard during fishing voyages before, during, and after the voyage that occurred in February 2018 constitutes a "discharge" of oil within the meaning of Section 311(a)(2). 33 U.S.C. § 1321(a)(2). Under Section 311(a)(2) of the CWA, "discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here. 33 U.S.C. § 1321(a)(2).

33. The discharges were of "oil" within the meaning of Section 311(a)(1) of the CWA. 33 U.S.C. § 1321(a)(1).

34. Defendants discharged oil from the *Vila Nova do Corvo II* into or upon navigable waters of the United States, adjoining shorelines, the contiguous zone, and into the ocean offshore of southeastern New England within the exclusive economic zone ("EEZ"). In particular, Defendants operated the vessel within and discharged oil into the contiguous zone during the February 2018 fishing voyage.

35. Defendants discharged oil from the *Vila Nova do Corvo II* while fishing in and traveling through the habitat of numerous types of natural resources within the contiguous zone and the EEZ. The oil discharges may have affected natural resources, including water, fish, marine mammals, sharks, birds, and biota, belonging to, appertaining to, or under the United States' exclusive management authority.

36. Discharging oil into and upon waters that these species inhabit is known to cause them harm.

37. The oil discharges were in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3.

38. The oil discharges violated Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

39. The oil discharges resulted from Defendants' willful misconduct or gross negligence. Defendants knew discharging used engine fuel filters and oily mixtures overboard is unlawful and knew the vessel's oily waste generation rate exceeded its capacity to retain the waste onboard during planned fishing voyages. Instead of legally managing the waste stream and operating within the limits of the vessel, Defendants willfully discharged oil while at sea.

Discharging oil overboard while fishing enabled the *Vila Nova do Corvo II* to stay at sea longer to increase its catch, thereby increasing profits, and it allowed Defendants to avoid the costs of proper waste management and disposal.

40. Defendants are each liable for civil penalties of up to $47,357 per day of violation or $1,895 per barrel discharged under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, a minimum of $189,427 and up to $5,683 per barrel discharged. *See* 33 C.F.R. § 27.3 (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

## SECOND CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Have Capacity to Retain Oily Mixtures Onboard

41. The preceding paragraphs are incorporated herein.

42. Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $47,357 per day for each violation pursuant to Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C); *see also* 33 C.F.R. § 27.3 (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

43. The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.350. Pursuant to 33 C.F.R. § 155.350, no person may operate an oceangoing vessel less than 400 gross tons unless the vessel: (1) "[h]as the capacity to retain on board all oily mixtures and is equipped to discharge these oily mixtures to a reception facility;" or (2) "[h]as approved oily-water separating equipment . . . ."

44. The *Vila Nova do Corvo II* is less than 400 gross tons.

45. The *Vila Nova do Corvo II* does not have an oil-water separating system on board.

46. Defendants operated the *Vila Nova do Corvo II* before, during, and after the February 2018 voyage without the capacity to retain on board the oily mixtures generated by the vessel. Instead of retaining the oily waste on board, Defendants illegally discharged the waste overboard.

47. Defendants are each liable for civil penalties of up to $47,357 per day for each violation under Section 311(b)(7)(C) of the CWA.

## THIRD CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Have a Fixed Piping System to Discharge Oily Mixtures

48. The preceding paragraphs are incorporated herein.

49. Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $47,357 per day for each violation pursuant to Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C); *see also* 33 C.F.R. § 27.3 (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

50. The Coast Guard has promulgated pollution control regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.420. Pursuant to 33 C.F.R. § 155.420, no person may operate an oceangoing vessel that is fitted with main or auxiliary machinery spaces and is 100 tons and above but less than 400 tons unless, *inter alia*, "[t]he ship has at least one pump installed to discharge oily mixtures through a fixed piping system to a reception facility" or the ship is equipped with oil-water separating equipment.

51. The *Vila Nova do Corvo II*'s engine room is a main machinery space.

52. The *Vila Nova do Corvo II* is 163 gross tons.

53. The *Vila Nova do Corvo II* does not have an oil-water separating system on board.

54. Defendants operated the *Vila Nova do Corvo II* before, during, and after the February 2018 voyage without a pump and fixed piping system to discharge oily mixtures to a reception facility. Instead of using a dedicated piping system for oily mixtures, the engine room bilge piping connects to the fresh water washdown piping and thereby can contaminate the fresh water flow with oily waste.

55. Defendants are each liable for civil penalties of up to $47,357 per day for each violation under Section 311(b)(7)(C) of the CWA.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

A. Assess civil penalties against each Defendant for the oil discharge violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $47,357 per day of violation under CWA Section 311(b)(7)(A) or, if it is proved that the violations are the result of gross negligence or willful misconduct, in the amount of at least $189,427 per discharge and up to $5,683 per barrel discharged under Section 311(b)(7)(D);

B. Assess civil penalties against each Defendant of up to $47,357 per day for each violation of the Coast Guard's pollution control regulations promulgated pursuant to CWA Section 311(j), as authorized under Section 311(b)(7)(C); and

C. Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

*/s/ Karen Dworkin*
KAREN DWORKIN

10

Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice


*/s/ Jason T. Barbeau*

JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov


ANDREW E. LELLING
United States Attorney

SUSAN M. POSWISTILO (BBO #565581)
Assistant U.S. Attorney
John J. Moakley Federal Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3103
susan.poswistilo@usdoj.gov

Of Counsel:

LT Nicole Bredariol
Staff Attorney
First Coast Guard District
408 Atlantic Ave.
Boston, MA 02109

LCDR Jesse Houck
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213